In re Christina THOMPSON, Debtor.

Sanford A. KOWAL, et al., Appellants,

v.

Charles M. MALKEMUS, Appellee.

No. 91–1750.

United States Court of Appeals,
First Circuit.

Heard Dec. 4, 1991.
Decided April 29, 1992.

**1138**

Sanford A. Kowal, Newtonville, Mass., for appellants.

Thomas J. Raftery with whom Ellen O. Harder and Sherin and Lodgen, Boston, Mass., were on brief, for appellee.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

The present appeal requires us to determine whether either the chapter 7 debtor or an unsecured creditor possesses standing to appeal a bankruptcy court order authorizing the chapter 7 trustee to settle an adversary proceeding to which the appellants were neither original nor intervening parties. We dismiss their appeal for lack of standing.

I

BACKGROUND

Appellant Christina T. Thompson, the chapter 7 debtor, and appellee Charles M. Malkemus, alleged holder of a secured claim against property of the chapter 7 estate, initiated divorce proceedings in November 1985 after twelve years of marriage. In May 1986, the Probate and Family Court of the Commonwealth of Massachusetts, Essex County, ("probate court")

entered its judgment of divorce *nisi*, incorporating the terms of a separation agreement between Thompson and Malkemus. Following a hearing at which Malkemus asserted that Thompson had withheld from the probate court relevant provisions of their separation agreement, the probate court modified its original divorce judgment to include the omitted provisions.

Thompson filed a chapter 11 petition in the United States Bankruptcy Court for the District of Massachusetts during December 1988. One month later, the proceedings were converted to chapter 7. Following the appointment of the chapter 7 trustee, Malkemus obtained relief from the automatic stay permitting a continuation of the probate court proceedings. Later, the probate court entered so-called civil contempt judgments, imposing coercive fines against Thompson for willful refusal to comply with the terms of the modified divorce judgment.[1] During April 1989, Malkemus filed several proofs of claim against the chapter 7 estate in amounts totalling approximately $878,000 plus interest, based on judgments and liens obtained in the probate court on property of the chapter 7 estate, including the former marital home. Appellant Sanford A. Kowal, Esquire, who represented appellant Thompson in the probate court proceedings, filed a proof of claim against the chapter 7 estate for attorney fees.

In October 1989, the marital home, the principal asset of the chapter 7 estate, was sold by the chapter 7 trustee for approximately $1 million. The chapter 7 trustee filed objections to the Malkemus claims and counterclaimed against Malkemus for breach of the separation agreement. Following discovery and two days of trial before the bankruptcy court in the ensuing adversary proceeding, the chapter 7 trustee arrived at a settlement with Malkemus, whereby Malkemus would receive approximately $700,000 in full satisfaction of all claims against the chapter 7 estate and the chapter 7 trustee would dismiss the counterclaim against Malkemus. Pursuant to Bankruptcy Rules 2002(a)(3) and 9019(a), appellants Thompson and Kowal were notified of the application to settle the adversary proceeding, and filed written objection to the settlement accompanied by objections to the Malkemus claims. Appellants objected to the Malkemus claims on the ground that the probate court judgments were invalid.[2] On December 3, 1990, following a hearing at which appellant Kowal

1. The judgments Malkemus obtained in the probate court following relief from the automatic stay were captioned judgments of "contempt." The bankruptcy court, after reviewing the comprehensive findings of fact made by the probate court, determined that most of the sums assessed against Thompson under the probate court judgments were amounts the probate court had found to be due Malkemus by appellant Thompson. Thus, the bankruptcy court in effect determined that, for the most part, the amounts awarded Malkemus under these judgments represented prepetition obligations to Malkemus arising from appellant Thompson's disposition of property in violation of the terms of the divorce judgment.

2. Appellants' written objections challenged the validity of the Malkemus claims, and thus the soundness of the proposed settlement, on numerous grounds. Appellants questioned the validity of the original and amended divorce judgments and, by extension, the contempt orders premised on Thompson's alleged disregard of the divorce judgments, on the grounds that (1) the initial judgment was stayed by Malkemus' timely motion to amend; (2) the amended divorce judgment did not formally incorporate the original divorce judgment or new findings of fact; (3) the probate court award of attorney fees was unreasonable in amount; and (4) the probate court judgments resulted from a "pattern of fraud and collusion" between Malkemus and the probate court judge. As concerned the latter ground, appellants alleged that the probate judge had political and personal reasons for entering the judgments against Thompson, and by denying appellants access to the probate court record the probate judge disabled Thompson from appealing the probate court rulings.

Furthermore, appellants argued, even assuming the divorce judgments were valid, the coercive "contempt" decrees were not enforceable since the divorce judgments did not contain sufficiently clear terms to place appellant Thompson, the alleged contemnor, on notice that her conduct constituted contempt. In addition, since the various contempt decrees were subject to appeal, appellants urged the bankruptcy court to delay hearing on the trustee's application for approval of the settlement until their probate court appeals matured. Finally, appellants argued that the Malkemus attachment liens were rendered invalid under Massachusetts law for failure to execute or levy within 30 days.

actively participated, the bankruptcy court approved the settlement of the adversary proceeding between the chapter 7 trustee and Malkemus.[3]

## II

## DISCUSSION

Although appellants assert numerous jurisdictional and constitutional challenges to the bankruptcy court order approving the settlement of the adversary proceeding between the chapter 7 trustee and Malkemus, we need address only their "standing" to appeal the order. *In re Dein Host, Inc.*, 835 F.2d 402, 404 (1st Cir.1987) (court "duty bound" to determine appellate standing *sua sponte*) (citing *Orr v. Orr*, 440 U.S. 268, 271, 99 S.Ct. 1102, 1107, 59 L.Ed.2d 306 (1979)). Appellants premise their right of appeal on (1) the bankruptcy court's disallowance of their objections to the proposed settlement of the adversary proceeding and (2) its implicit denial of their objections to the Malkemus claims against the chapter 7 estate.

### A. *Standing to Appeal Settlement of Adversary Proceeding*

Bankruptcy Rule 9019(a) provides that, "[o]n motion by the trustee and after a hearing on notice to creditors, the United States trustee, the debtor and indenture trustees as provided in Rule 2002 and to such other entities as the court may designate, the court may approve a compromise or settlement." Fed.R.Bankr.P. 9019(a). All "parties in interest," including the debtor, trustee, and creditors, normally must be given twenty days' notice of the hearing on approval of a compromise or settlement by the trustee. Fed.R.Bankr.P. 2002(a)(3). The general notice provisions in Bankruptcy Rule 2002(a)(3) enable interested entities to monitor the progress of the bankruptcy case and to interpose timely opposition to the proposed settlement. Appellants mistakenly presume, however, that their entitlement to prior notification of the hearing on the approval of the settlement of the adversary proceeding between the chapter 7 trustee and Malkemus ensured appellate standing to challenge the bankruptcy court order entered over their objection after notice and hearing.

Under the Bankruptcy Code of 1978, an adversary proceeding is a subsidiary lawsuit within the larger framework of a bankruptcy case. *See* Fed.R.Bankr.P. 7001.[4] The parties to the instant adversary proceeding were the chapter 7 trustee and Malkemus. The opportunity broadly afforded all "parties in interest" to monitor the administration of the bankruptcy case through the provision of notice under Bankruptcy Rule 2002(a)(3)[5] does not con-

---

3. Contrary to appellants' contention, the December 3, 1990, order was not entered "against them"; in fact, it does not refer to them.

4. An adversary proceeding was commenced when the chapter 7 trustee joined his objection to the Malkemus proofs of claim with "a demand for relief of the kind specified in Rule 7001." Fed.R.Bankr.P. 3007. The chapter 7 trustee's counterclaim against Malkemus for breach of the separation agreement constituted a claim "to recover money or property." Fed.R.Bankr.P. 7001(1).

5. The commentary to Bankruptcy Rule 9019 suggests that the standing accorded "parties in interest" under Bankruptcy Rule 2002 is circumscribed. First, motions to compromise are to be "filed in the administrative file, as distinguished from the adversary proceeding file, if the compromise comes about in the context of an adversary proceeding." William L. Norton, Jr., *Norton Bankruptcy Law and Practice: Rules and Official Forms* 845 (1990–91 ed.) (Fed. R.Bankr.P. 9019, editors' comment). Unlike an adversary proceeding, an administrative proceeding is warranted where the trustee's actions are essentially uncontested. *See* Lawrence D. King, 9 *Collier on Bankruptcy* ¶ 9014–2–3 (15th ed. 1991) [hereinafter *"Collier"*] (unopposed motion by trustee to sell property of the estate may be handled in administrative proceeding). Although a creditor has the right to object to a proposed compromise, objection will not preclude court approval. *In re A & C Properties*, 784 F.2d 1377, 1382 (9th Cir.), *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986); *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1010 (4th Cir.1985) (debtor's objection to settlement not controlling where settlement is in "best interests" of estate); *In re Mobile Air Drilling Co.*, 53 B.R. 605, 607 (Bankr.N.D. Ohio 1985). The commentary thus suggests that the right to notice normally accorded all "parties in interest" under Bankruptcy Rules 2002(a)(3) and 9019(a) does not entail party status in the adversary proceeding to be settled or compromised. Second, the general notice requirement under

fer on a debtor or the individual creditors in a bankruptcy case the status of "parties" to every adversary proceeding brought by or against the chapter 7 trustee. Rather, the Bankruptcy Code and the Bankruptcy Rules delimit the appellate standing of "parties in interest" under Bankruptcy Rule 2002(a)(3) to challenge judgments entered in adversary proceedings to which they were not proper parties.

> In a typical civil case, there is a plaintiff and a defendant, one of which loses at the trial level. It is therefore unnecessary to set strict standards regarding standing on appeal, because the person appealing is the party to the action who lost below. On the other hand, bankruptcy litigation many times involves and affects the interests of parties who are not formally parties to litigation.... [Several] examples come immediately to mind: *approval of a compromise between a trustee and a third party, with an appeal taken by a creditor or by the debtor*[ ].... In none of these instances [was] the ... creditor[ ] [who is appealing] or the debtor nominally a party. It might be said that all of the creditors and the debtor are parties to every order entered in a bankruptcy proceeding, but *that does not help in determining what parties have standing to take an appeal,* because it would result in a rule that all parties who are involved either directly, indirectly or tangentially in the bankruptcy proceeding have the power to appeal from almost any order entered by the bankruptcy judge.

Bankruptcy Rule 2002(a)(3) is not absolute, but can be dispensed with "for cause shown." *See In re Patel,* 43 B.R. 500, 503–04 (N.D.Ill.1984).

**6.** Civil Rule 24(a) provides:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Lawrence D. King, 9 *Collier on Bankruptcy* ¶ 8001.05, at 8001–12 (15th ed. 1991) (emphasis added) (citations omitted) [hereinafter *"Collier"*].

 The formal procedural criteria for intervention prescribed in Federal Rule of Civil Procedure 24 are made applicable to adversary proceedings by virtue of Bankruptcy Rule 7024.[6] Thus, nonparty participation in an adversary proceeding is dependent on intervention. *See In re Latimer,* 918 F.2d 136, 137 (10th Cir.1990) (debtor lacks standing to participate in adversary proceeding, absent intervention), *cert. denied,* —— U.S. ——, 112 S.Ct. 186, 116 L.Ed.2d 147 (1991).[7] Permission to intervene as of right endows the intervenor with appellate standing to challenge an adverse judgment entered in the adversary proceeding. *See, e.g., Karcher v. May,* 484 U.S. 72, 77, 108 S.Ct. 388, 392, 98 L.Ed.2d 327 (1987) (while "[o]ne who is not an original party to a lawsuit may of course become a party by intervention, substitution or third-party practice, ... we have consistently applied the rule that one who is not a party or has not been treated as a party to a judgment has no right to appeal") (Rule 24); *Sandra Cotton, Inc. v. Bank of New York,* 87 B.R. 272, 274 (W.D.N.Y.1988) ("[w]ithout first having sought to intervene in the [bankruptcy court, appellant] can not now be granted standing to appear on the appeal").

 Moreover, mere participation in a hearing on the approval of a settlement or

Fed.R.Civ.P. 24(a).

**7.** The concentric arrangement of the various forms of proceedings within a bankruptcy case is reinforced in the Bankruptcy Rules. An entity asserting a protectable interest in an adversary proceeding, yet not a "party in interest" to the larger bankruptcy case, must first seek intervention in the bankruptcy case under Bankruptcy Rule 2018. Whereas Bankruptcy Rule 7024 governs intervention in an adversary proceeding within the bankruptcy case. Thus, intervention must be separately permitted in the bankruptcy case and in an adversary proceeding within the bankruptcy case. *See In re Charter Co.,* 50 B.R. 57, 61 (Bankr.W.D. Texas 1985); Fed.R.Bankr.P. 7024 advisory committee's note; 9 *Collier* ¶ 7024.01, at 7024–1.

**1142**

compromise in an adversary proceeding does not constitute *de facto* intervention:

> [T]he fact that the appellants were given an opportunity to be heard in the bankruptcy court does not provide a basis for standing on appeal.... '[A]n interested party who had taken part in the [compromise and settlement] proceedings and had the right to intervene, but who had not formally done so, was not capable of appealing, as such a party was not properly on the record as an intervenor, and not being a party to the record has no standing to appeal.'

*In re Central Ice Cream Co.*, 62 B.R. 357, 360 (N.D.Ill.1986) (quoting *In re South State Street Bldg. Corp.*, 140 F.2d 363, 367 (7th Cir.1944)).[8]

 A putative intervenor under Bankruptcy Rule 7024 must submit a timely motion to intervene in the adversary proceeding, demonstrate a direct and substantial interest which would be impaired were intervention not permitted,[9] and establish that its interest is inadequately represented by existing parties. *Caterino v. Barry*, 922 F.2d 37, 39–40 (1st Cir.1990)

**8.** Similar limitations on participation by "parties in interest" are recognized elsewhere under the Code. Bankruptcy Code § 1109(b), 11 U.S.C. § 1109(b), which provides that "[a] party in interest, including the debtor, the trustee [and] ... a creditor ..., may raise and may appear and be heard on any issue in a case under [chapter 11]," does not afford a right to intervene under Rule 24(a)(1), even though such "parties in interest" enjoy the general right to "monitor" the progress of the chapter 11 case. *See, e.g., Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283, 1286–87 (5th Cir.1985) (creditors' committee possesses no statutory right to intervene, but must establish lack of adequate representation); *In re Charter*, 50 B.R. at 62–64. *But cf. In re Neuman*, 124 B.R. 155, 157–60 (S.D.N.Y.1991) (rejecting *Fuel Oil* analysis, and finding congressional intent to confer absolute statutory right of intervention by enactment of section 1109(b)).

**9.** Generally speaking, a nonparty lacks appellate standing in bankruptcy proceedings unless the nonparty is a "person aggrieved" by the challenged order. *See In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir.1987); *In re Fondiller*, 707 F.2d 441, 443 (9th Cir.1983); 9 *Collier* ¶ 8001.05, at 8001–11. The term "person aggrieved" delimits appellate standing to "those persons whose rights or interests are 'directly and adversely affected pecuniarily' by the order or decree...."

(Rule 24); *Amoco Oil Co. v. Dingwell*, 690 F.Supp. 78, 81 (D.Me.1988), *aff'd sub. nom. Travelers Indem. Co. v. Dingwell*, 884 F.2d 629 (1st Cir.1989) (Rule 24).[10]

 Although the burden of demonstrating inadequate representation remains with the putative intervenor throughout, *see Jansen v. Cincinnati*, 904 F.2d 336, 342–43 (6th Cir.1990) (Rule 24); *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C.Cir.1986), it is at its most onerous where an existing party is under a legal obligation to represent the interests asserted by the putative intervenor:

> In the situation where one of the duties of the existing parties is to represent the interests of the intervenor, intervention will not be allowed unless a *compelling showing* of inadequate representation is made. Application of this principle in the bankruptcy context can be seen in those cases holding that *unsecured creditors seeking to intervene in adversary proceedings begun by the trustee have 'a heavy burden'* to show inadequacy of representation.

*In re El San Juan Hotel*, 809 F.2d at 154 (quoting *In re Fondiller*, 707 F.2d at 442–43); *see also In re Dein Host*, 835 F.2d at 403; *In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 513 (2d Cir. 1985), *cert. denied*, 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985); *In re Goodwin's Discount Furniture, Inc.*, 16 B.R. 885, 888 (Bankr. 1st Cir.1982). The "person aggrieved" standard substantially replicates the procedural requisites for intervention under Bankruptcy Rules 2018 and 7024, with a view to determining whether a *nonparty* appellant, whose interests were likely not represented by existing parties, and who may not have been afforded prior notice, could have demonstrated so significant an unrepresented interest as to require intervention.

**10.** Absent intervention of right under Rule 24(a), permissive intervention is allowable under Fed.R.Civ.P. 24(b) if it is determined that (1) "the applicant's claim or defense and the main action have a question of law or fact in common," (2) the applicant's interests are not adequately represented by an existing party, *and* (3) intervention would not result in undue delay or prejudice to the original parties. *See In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 853–54 (Bankr. S.D.N.Y.1989). As we conclude that appellants' cognizable legal interests were adequately represented by the chapter 7 trustee, it is unnecessary to deal with the requisites for permissive intervention.

9 *Collier* ¶ 7024.05, at 7024–7. The presumption of adequacy that attaches to representation undertaken in the performance of a fiduciary duty is not overborne by mere conclusory speculation. *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir.1979) (Rule 24); *see also League of United Latin American Citizens v. Clements*, 884 F.2d 185, 189 (5th Cir.1989) (Rule 24). Rather, the putative intervenor must assert *concrete* facts which demonstrate that (1) the existing representation of the putative intervenor's interests is inhibited by the personal interests of the existing representative, (2) the existing representative and the opposing party are engaged in collusive activities, or (3) the existing representative has failed or refused to fulfill the fiduciary duty to protect the interests asserted by the putative intervenor. *Cf. Heyman v. Exchange Nat'l Bank*, 615 F.2d 1190, 1194 (7th Cir. 1980) (debtor did not meet "heavy burden" of proving inadequacy of chapter 7 trustee's representation in adversary proceeding for the recovery of voidable preference);

*In re DeLap*, 44 B.R. 21, 22 (W.D.Wis.1984) (no intervention of right by general creditor in adversary proceeding to set aside preferential transfer where "heavy burden" of proving inadequacy of trustee's representation is not met); *In re Baker*, 22 B.R. 791, 792–93 (Bankr.D.Md.1982) (no right to intervene in adversary proceeding where trustee was under "legal bond" and "duty" to represent creditors properly and individual creditor "made no showing that he [was] not being represented properly."); *see also Purnell v. Akron*, 925 F.2d 941, 949–50 (6th Cir.1991) (Rule 24); *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir.1987) (Rule 24); *Bottoms v. Dresser Indus., Inc.*, 797 F.2d 869, 872 (10th Cir.1986) (Rule 24); 7A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1909 [hereinafter *"Wright & Miller"*].

Leaving aside several problematic requirements of proof under Bankruptcy Rule 7024,[11] including the establishment of a "significantly protectable interest" in the settlement of the adversary proceeding,[12] we conclude that appellants

11. There is no indication that the bankruptcy court ever regarded either appellant as a would-be intervenor or accorded either appellant party status in the adversary proceeding. In an adversary proceeding, more so than in the conventional contested matter, existing parties are entitled to expect reasonable compliance with procedural rules. *See Shevlin v. Schewe*, 809 F.2d 447, 450 (7th Cir.1987) (intervenor may not entirely ignore Rule 24(a) procedural requirements, particularly where parties settle case in meantime); *In re Beard*, 112 B.R. 951, 954–55 (Bankr.N.D.Ind.1990) (Rule 7024) (same, contrasting adversary proceedings and contested matters); *cf. In re Bicoastal Corp.*, 122 B.R. 771, 774 (Bankr.M.D.Fla.1990) (formal intervention required under Rule 7024 not applicable to contested matters). A request for leave to intervene under Bankruptcy Rule 7024(c) must meet several formal criteria: (1) it must be by motion served on the existing parties pursuant to Fed. R.Civ.P. 5; (2) the motion must state the grounds for intervention; and (3) the motion must be accompanied by a pleading setting forth the claim or defense to be asserted on intervention. Fed.R.Bankr.P. 7024(c). *See also Wright & Miller*, § 1914.

It is clear from their written submissions that appellants never contemplated a formal motion to intervene. Appellants merely requested a "continuation and broadening of the present

proceeding to permit [them] and others to contest in an evidentiary hearing Malkemus' claims and debts to the estate." Nevertheless, given the policy favoring liberal intervention under Rule 24, on occasion courts have treated technically deficient applications as informal motions to intervene. *See, e.g., Farina v. Mission Inv. Trust*, 615 F.2d 1068, 1075 (5th Cir.1980). For present purposes, therefore, we assume *arguendo*, without deciding whether the same degree of liberality should obtain under Bankruptcy Rule 7024, that appellants' request was an informal motion to intervene, and we turn to a consideration of its sufficiency.

12. Under Bankruptcy Rule 7024, the putative intervenor must show that he has a "significantly protectable interest" in the adversary proceeding. *See Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971) (Rule 24). A chapter 7 debtor generally is not considered a "person aggrieved," as she lacks a pecuniary interest in the "property of the estate." *In re El San Juan Hotel*, 809 F.2d at 154–55; *cf. 9 Collier*, ¶ 8001.05, at 8001–12 n. 2b (chapter 7 debtor is insolvent, while chapter 11 debtor may have standing if plan contemplates reorganization of ongoing business); *but cf. Heyman*, 615 F.2d at 1194 ("[chapter 7 debtor's] interest in a maximum recovery ... may differ in size, but not in kind from the interest of every other creditor ... where recovery of as-

in any event failed to allege concrete facts from which the bankruptcy court could have inferred either a conflict of interest, collusion, or nonfeasance on the part of the chapter 7 trustee. First, appellants do not assert that the chapter 7 trustee had a personal financial interest in the terms of the settlement, let alone an interest adverse to the chapter 7 estate. Second, their veiled allegations of fraud and collusion are all directed at the probate court proceedings and participants, not at the chapter 7 trustee. *See, e.g., Point Pleasant Canoe Rental, Inc. v. Tinicum Township*, 110 F.R.D. 166, 169 (E.D.Pa.1986) (to establish collusion, intervenor must demonstrate fraud, the use of fraudulent means, or the use of lawful means to achieve an unlawful purpose).

Finally, appellants contend that the chapter 7 trustee refused to perform various fiduciary duties imposed by the Bankruptcy Code. Appellants argue that the settlement of the adversary proceeding amounted to an improvident abandonment of property of the chapter 7 estate, *see* Bankruptcy Code § 554(a), 11 U.S.C. § 554(a), and a failure and refusal by the chapter 7 trustee to act in the best interests of the estate and "to act diligently [and] properly." Additionally, appellants fault the chapter 7 trustee for failing to "conduct effective discovery" or to "master the facts and claims" and for not allowing appellants to attend and participate at important discovery proceedings.

Appellants' conclusory assertions fall far short of the creditable demonstration of fiduciary nonfeasance required to establish lack of adequate representation. First, we strongly disagree with their characterization of the challenged settlement as a dereliction of fiduciary duty on the part of the chapter 7 trustee. The trustee objected to the Malkemus claims, initiated an adversary proceeding for affirmative relief, conducted extensive pretrial discovery and litigated through two days of trial. Second, the chapter 7 trustee proposed to *settle* the litigation, not to abandon or withdraw all objections to the Malkemus claims. If a would-be intervenor bears a "heavy burden" in circumstances where the trustee proposes an outright relinquishment of all claims for relief in an adversary proceeding, *see, e.g., In re DeLap*, 44 B.R. at 22 (unsecured creditor not entitled to intervene as of right where "subsequent legal research convinced the Trustee" that transfer was not a voidable preference, thereby warranting stipulation of dismissal), the impediments to intervention in a case where the proposed compromise results in substantial recoveries for the benefit of the chapter 7 estate are necessarily steepened. The chapter 7 trustee's prosecution and settlement of the adversary proceeding with Malkemus worked a substantial reduction, approximating not less than $175,000, in the Malkemus claims against the chapter 7 estate, which the trustee reasonably expected would permit payment of a 15–20% dividend to holders of allowed unsecured claims, including appellant Kowal.

Appellants allege a lack of perseverance on the part of the chapter 7 trustee, but we are unable to conclude that more would have been required in the exercise of due diligence. Their objections to the settlement are premised almost entirely on the decidedly problematic contention that the underlying divorce judgment and "contempt" decrees obtained by Malkemus were either tainted by fraud or subject to reversal on appeal. As the bankruptcy court noted, however, their vaunted appeals had been languishing in the state

---

sets depends on a trustee's diligence"). There are two exceptions: (1) if the debtor can show that a successful appeal would generate assets in excess of liabilities, entitling the debtor to a distribution of surplus under Bankruptcy Code § 726(a)(6), 11 U.S.C. § 726(a)(6), *see In re Cooperativa Cafeteros*, 37 B.R. 952, 955 (D.P.R. 1984), or (2) the order appealed from affects the terms of the debtor's discharge in bankruptcy. *Id.* at 955 n. 6. Although appellant Thompson, the chapter 7 debtor, asserts that she could establish a surplus of assets if afforded an evidentiary hearing, she concedes that she made no attempt to demonstrate a potential surplus, either before the bankruptcy court or in her appellate brief.

courts for between two and four years prior to the settlement hearing.[13] Furthermore, the chapter 7 trustee represented to the court at the settlement hearing that he had concluded, based on an independent review, that the probate court judgments were founded on "unassailable findings of fact." Thus, armed only with a counterclaim for breach of the separation agreement, predicated on appellant Thompson's allegations of misconduct by Malkemus' in their divorce action, the chapter 7 trustee cannot reasonably be faulted for compromising and settling objections to claims grounded in facially valid judgments rendered in favor of Malkemus by a state court of competent jurisdiction.

The baseline for appellants' opposition to the proposed settlement rests in their readiness to second-guess the informed judgment of the chapter 7 trustee, as well as the discretionary determination of the bankruptcy court, that continued litigation would not result in a net benefit to the chapter 7 estate. As the chapter 7 trustee is charged with the fiduciary duty to administer the chapter 7 estate expeditiously in the best interests of the estate, *see In re Riverside–Linden Inv. Co.*, 925 F.2d 320, 322 (9th Cir.1991) ("trustee's duty to expeditiously close the estate [is] his 'main' duty"); Bankruptcy Code § 704(1), 11 U.S.C. § 704(1), (duties of trustee), the important policy favoring efficient bankruptcy administration normally will warrant judicial recognition that the chapter 7 trustee, as the duly appointed or elected representative of *all* unsecured creditors, rather than the chapter 7 debtor or an individual creditor, is the more appropriate arbiter of the "best interests" of the chapter 7 estate.

■ Furthermore, a chapter 7 trustee, like other fiduciaries engaged in complex litigation, realistically cannot be required to demonstrate to the satisfaction of every individual creditor and the debtor, or to any compelling degree of certitude, that the settlement benefit to the chapter 7 estate and the value of the settled claim comprise a matched set. Rather, a chapter 7 trustee is required to reach an informed judgment, after diligent investigation, as to whether it would be prudent to eliminate the inherent risks, delays and expense of prolonged litigation in an uncertain cause. Appellants have made no creditable demonstration to the contrary.

An unguarded conferral of *nonparty* standing to appeal settlement orders entered in an adversary proceeding, after a full and fair opportunity to all "parties in interest" to assert their opposition, *see* Fed. R.Bankr.P. 2002(a)(3), would thwart the longstanding policy of according due deference to bankruptcy court decisions governing the orderly administration of the chapter 7 estate, *see, e.g., In re Weston*, 110 B.R. 452, 458 (E.D.Cal.1989) (bankruptcy court order approving a compromise or settlement is reviewed for abuse of discretion), and frustrate the traditional policies favoring compromise, *see In re A & C Properties*, 784 F.2d at 1381; *see also* 9 *Collier* ¶ 9010.03, at 9019–3, and expeditious administration in bankruptcy cases, *see In re Carla Leather, Inc.*, 44 B.R. 457, 472 (S.D.N.Y.1984) (trustee's duty to investigate facts relating to pending litigation is circumscribed by "concurrent duties of expeditiously liquidating the estate and avoiding all unreasonable expense," and "trustee is to exercise prudence and at the same time be in a position so as to act on a settlement opportunity when that opportunity arises.").

This rule of appellate standing is necessary to insure that bankruptcy proceedings are not unreasonably delayed by

13. Moreover, as the chapter 7 trustee suggested to the bankruptcy court, appellants' commitment to the efficient and expeditious administration of the chapter 7 estate appears to have left something to be desired:

We were presented with probably the most difficult probate record, in fact, when we asked the debtor and their counsel early on, "Are you divorced?" They couldn't even give us an answer, believe it or not. We sent a letter to the Probate Court, and I received very quickly, a judgment back saying they were divorced in 1986 or '87.

protracted litigation that does not serve the interests of either the bankrupt's estate or its creditors. The nature of bankruptcy litigation, with its myriad of parties, directly and indirectly involved or affected by each order and decision of the bankruptcy court, mandates that the right of appellate review be limited to those persons whose interests are directly affected.

*In re El San Juan Hotel,* 809 F.2d at 154. *See In re Carbide Cutoff, Inc.,* 703 F.2d 259, 264 (7th Cir.1983) (the general rule regarding appellate standing in bankruptcy proceedings, "followed by this and other circuits," accords appellate standing to the trustee rather than individual unsecured creditors and "facilitates the 'orderly administration of ... [debtor] estates.'" (citing *In re Tyne,* 261 F.2d 249, 251 (7th Cir.1958)); *In re Schultz Manufacturing & Fabricating Co.,* 110 B.R. 384, 388–89 (N.D.Ind.1990) (individual creditors lack appellate standing where chapter 7 trustee, as proper party to adversary proceeding, refuses to challenge its settlement); *In re Central Ice Cream Co.,* 62 B.R. at 361 ("only the Trustee has standing to appeal from a bankruptcy court order on behalf of creditors' rights."); *cf. In re Blumer,* 66 B.R. 109, 112 (Bankr. 9th Cir.1986) (unsecured creditor possesses standing to appeal section 364 order authorizing chapter 11 trustee to obtain unsecured credit in ordinary course of business). *But see In re Carbide,* 703 F.2d at 266 (unnecessary to invoke general rule and deny appellate standing to non-trustee, provided it is clear that the bankruptcy court specifically accorded appellant the inherent and collateral authority to appeal).

■ It is important to note that the interests of the chapter 7 estate, as represented by the chapter 7 trustee, are not coextensive with the interests of the chapter 7 debtor. Securing the settlement in hand surely and directly benefitted the chapter 7 estate and its unsecured creditors, including appellant Kowal, whereas it brought no direct financial benefit to the chapter 7 debtor. Conversely, a prolongation of the Malkemus adversary proceeding, as appellants urge, inevitably would entail relinquishment of the settlement in hand in favor of the more amorphous and elusive litigation prospects in the bush.

The chapter 7 trustee made an informed judgment that the proposed settlement of the Malkemus adversary proceeding would be in the best interests of the chapter 7 estate and all its creditors. Considering their radically diverse perspectives, it is not surprising that appellants are attracted by the glitter of further litigation financed at the expense of the chapter 7 estate, whereas the chapter 7 trustee spurned the prospects of further litigation in favor of the settlement offer. Moreover, it is apparent that appellants' intuitive confidence in their own ability to outguess the chapter 7 trustee's settlement decision, as well as the bankruptcy court's settlement order, has more than a mite to do with the insignificance of their stake in the settlement. Thus, appellants' purpose is inapposite to the duty imposed on a chapter 7 trustee under the Code, since it is not so much the interests of the chapter 7 estate, as it is their self-interest, which appellants would have the chapter 7 trustee champion by refusing to settle the Malkemus litigation.

We conclude, therefore, that appellants have demonstrated neither nonfeasance nor misfeasance in the performance of the chapter 7 trustee's fiduciary duty to the chapter 7 estate and its creditors. Accordingly, appellants were not entitled to intervene in the Malkemus adversary proceeding and lack appellate standing to challenge the settlement order.

## B. *Standing to Appeal Dismissal of Objections to Malkemus Claims*

■ Finally, notwithstanding that the settlement order contemplates a partial allowance of the Malkemus claims, appellants were not relieved of the requirement to intervene in the adversary proceeding

merely by virtue of their written objections to the Malkemus claims.[14]

■ Bankruptcy Code § 502(a), 11 U.S.C. § 502(a), provides that any proof of claim "is deemed allowed, unless a party in interest ... objects." Unlike a proof of claim, which must be filed before the bar date, an objection to a proof of claim may be filed at any time. *See, e.g., In re Kolstad,* 928 F.2d 171, 174 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 419, 116 L.Ed.2d 439 (1991). Nevertheless,

> "the needs of orderly and expeditious administration do not permit the full and unfettered exercise of [a creditor's] right to object to the allowance of another creditor's claim. The most important qualification attached to the right of a creditor to object is that it is the trustee who acts as the spokesman for all the creditors in discharge of the trustee's duty unless the trustee *refuses to take action.*"

*In re Morrison,* 69 B.R. 586, 589 (Bankr. E.D.Pa.1987) (emphasis added) (citing 3 *Collier* ¶ 502.1, at 502–13) (although unsecured creditor probably lacked standing to object to claim, objection dismissed on alternate ground); *In re Werth,* 54 B.R. 619, 622 (D.Colo.1985) (no *res judicata* effect attached to compromise in bankruptcy case where only the trustee possessed standing to object to claims); Fed.R.Bankr.P. 3007 advisory committee's note.

■ As a general rule, absent leave of court, the chapter 7 trustee alone may interpose objections to proofs of claim. Leave to object is not generally accorded an individual creditor unless the chapter 7 trustee refuses to object, notwithstanding a request to do so, and the bankruptcy court permits the creditor to object in the trustee's stead. *See* Bankruptcy Code § 704(5), 11 U.S.C. § 704(5), ("if a purpose would be served, [the trustee shall] examine proofs of claim and object to the allowance of any claim that is improper."); *see also In re*

*Dominelli,* 820 F.2d 313, 317 (9th Cir.1987) (trustee "optimal party" to object); *In re Weeks, Thomas & Lysaught, Chartered,* 97 B.R. 46, 47 (D.Kan.1988) (once trustee is appointed, debtor may not object to claims as a "party in interest"); *In re Charter Co.,* 68 B.R. 225, 227 (Bankr.M.D. Fla. 1986); *In re Fox,* 64 B.R. 148, 151 (Bankr. N.D.Ohio 1986) (although a creditor is a "party in interest" under section 502, "needs of efficient administration" require that trustee control); *In re Mobile Air Drilling,* 53 B.R. at 608–09; *In re Parker Montana Co.,* 47 B.R. 419, 421 (D.Mont. 1985) (as the representative for the chapter 7 estate, the trustee is the proper party to bring action for equitable subordination); *In re Silverman,* 37 B.R. 200, 201 (S.D.N.Y.1982) (chapter 7 debtor may object to claim only if disallowance would result in estate surplus). *But cf. In re Parker Montana,* 47 B.R. at 421–22 (*secured* creditors generally enjoy standing to object to unsecured claims without first requesting trustee to do so).

The chapter 7 trustee did not decline or refuse to challenge the Malkemus claims. Rather, the trustee objected to the Malkemus claims and counterclaimed for affirmative relief in behalf of the chapter 7 estate. The ensuing adversary proceeding settlement significantly benefitted the chapter 7 estate and all its general creditors. That it did not result in an estate surplus for appellant Thompson, the chapter 7 debtor, is not only unsurprising in a liquidation proceeding but also immaterial except insofar as it tends to corroborate the absence of a direct pecuniary interest on the part of the chapter 7 debtor in the allowability of the Malkemus claims. *See In re Vreugdenhil,* 773 F.2d 213, 215 (8th Cir.1985) (unless there has been an abandonment of the encumbered property by the trustee, the chapter 7 debtor lacks standing to challenge the validity or priority of encumbrances).

---

**14.** An objection to a proof of claim, without more, merely commences a contested matter, not an adversary proceeding. *In re Beard,* 112 B.R. at 955.

## III

## CONCLUSION

Absent a compelling showing that the chapter 7 trustee failed or refused to perform a fiduciary duty imposed by the Bankruptcy Code, once the trustee arrives at an informed judgment that further prosecution of an objection to a proof of claim would be unavailing or counterproductive to the chapter 7 estate, the chapter 7 debtor and an individual unsecured creditor are without appellate standing to challenge a bankruptcy court order approving a compromise or settlement of the claim-related litigation. As appellants were not entitled to intervene in the adversary proceeding, nor participate in a contested matter in lieu of the chapter 7 trustee,[15] they lack standing to appeal the settlement order.

*Appeal dismissed.*

---

15. Of course, unsecured creditors, as well as the chapter 7 debtor, enjoy limited participatory rights short of formal intervention. First, as previously noted, the chapter 7 debtor and creditors normally are entitled to notice of any administrative proceeding conducted on the approval of a compromise or settlement. Fed. R.Bankr.P. § 9019(a), 2002(a)(3). *See also In re Baker,* 22 B.R. at 793 (creditor denied leave to intervene may file amicus brief below). Second, creditors may petition the bankruptcy court to remove the trustee "for cause." *See* Bankruptcy Code § 324, 11 U.S.C. § 324. Finally, an action may lie to surcharge a trustee's bond for failure to discharge statutory duties. *See* Bankruptcy Code § 322, 11 U.S.C. § 322; *see also In re San Juan Hotel Corp.,* 847 F.2d 931, 937 (1st Cir.1988).