# United States Court of Appeals
## For the First Circuit

Nos. 05-2187, 05-2189

B. FERNÁNDEZ & HNOS., INC.;
CARIBBEAN WAREHOUSE LOGISTICS, INC.,

Plaintiffs, Appellees,

v.

KELLOGG USA, INC.; ABC INSURANCE;
XYZ SURETY; PREFERRED INSURANCE;
JOHN DOE; RICHARD DOE,

Defendants,

KELLOGG CARIBBEAN SERVICES COMPANY, INC.,

Movant, Appellant.

No. 05-2188

B. FERNANDEZ & HNOS., INC.;
CARIBBEAN WAREHOUSE LOGISTICS, INC.,

Plaintiffs, Appellees,

v.

KELLOGG USA, INC.,

Defendant, Appellant,

ABC INSURANCE; XYZ SURETY; PREFERRED INSURANCE;
JOHN DOE; RICHARD DOE,

Defendants.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., <u>Senior U.S. District Judge</u>]

Before

Torruella, <u>Circuit Judge</u>,

John R. Gibson, <u>Senior Circuit Judge</u>,[*]

and Howard, <u>Circuit Judge</u>.

---

    <u>Ricardo F. Casellas</u>, with whom <u>Fiddler González & Rodríguez, P.S.C.</u>, was on brief for appellant, Kellogg Caribbean Services Co., Inc.
    <u>Luis A. Oliver</u>, with whom <u>Fiddler González & Rodríguez, P.S.C.</u>, were on brief, for appellant and Kellogg USA, Inc.
    <u>Alfredo Fernández Martínez</u>, with whom <u>Delgado & Fernández, LLP</u>, <u>Ramón L. Walker Merino</u> and <u>Walker Merino Law Office</u>, were on brief, for appellees, B. Fernandez & Hnos., Inc. and Caribbean Warehouse Logistics, Inc.

---

March 17, 2006

---

[*]Of the Eighth Circuit, sitting by designation.

**HOWARD**, <u>Circuit Judge</u>.  Before us are three interlocutory appeals arising from an action brought by B. Fernandez & Hnos., Inc. (BFH) and Caribbean Warehouse Logistics (CWL) (collectively, appellees) against Kellogg USA, Inc. (Kellogg USA).  The appellees accuse Kellogg USA of violating Puerto Rico Law 75, a statute prohibiting a principal from terminating without just cause a distribution agreement with its dealer.  P.R. Laws Ann. tit. 10, § 278.  Appellees seek an injunction, damages, and declaratory relief.  Federal jurisdiction is premised on diversity of citizenship as appellees are Puerto Rico companies and Kellogg USA is a Michigan company.  <u>See</u> 28 U.S.C. § 1332.

The first appeal, by nonparty Kellogg Caribbean Services, Inc. (Kellogg Caribbean), a Puerto Rico company, challenges the denial of its motion to intervene under Fed. R. Civ. P. 24(a) and for dismissal under Fed. R. Civ. P. 19(b).  Pointing out that <u>it</u> (and not Kellogg USA) is the party to the agreements with appellees, Kellogg Caribbean argues that it is an indispensable party whose intervention must be allowed but would destroy diversity jurisdiction.  The district court denied the motion on the ground that Kellogg USA, a company affiliated with Kellogg Caribbean because they share the same corporate parent company, could adequately represent Kellogg Caribbean's interests.

The second and third appeals, by Kellogg USA and Kellogg Caribbean respectively, challenge a preliminary injunction ordering Kellogg USA and its affiliates (which includes Kellogg Caribbean)

to specifically perform the agreements with appellees. We do not reach the merits of these appeals because our resolution of the intervention appeal requires that we vacate the preliminary injunction.

## I.

We derive the relevant facts primarily from the allegations and evidence submitted by Kellogg Caribbean in support of its motion to intervene but also consider uncontroverted facts established elsewhere in the record. See Southwest Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 819-20 (9th Cir. 2001) (stating that "a district court is required to accept as true the non-conclusory allegations made in support of an intervention motion") (collecting cases); 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1914, at 418 (2d ed. 1986).

BFH, a Puerto Rico company, distributes Kellogg products to Puerto Rico retailers. CWL, also a Puerto Rico company and an affiliate of BFH, provides logistical and warehousing services. Kellogg USA, a Michigan company and subsidiary of nonparty Kellogg Company, manufactures cereal products on the mainland United States for export to certain geographic markets throughout the world. Kellogg Caribbean, a Puerto Rico company, promotes, sells and distributes Kellogg products in Puerto Rico. Like Kellogg USA, Kellogg Caribbean is a subsidiary of Kellogg Company.

In 1992, Kellogg USA signed an agreement to supply Kellogg products to BFH for distribution to Puerto Rico retailers. Sometime thereafter, Kellogg USA assigned its rights and obligations under this agreement to Kellogg Caribbean.[1]

In October 2004, BFH and Kellogg Caribbean signed an Inventory and Repurchase Agreement under which Kellogg Caribbean would purchase the Kellogg products owned by BFH. The purpose of the repurchase agreement was to permit Kellogg Caribbean to consolidate its warehouse and administrative functions into one facility. Within this agreement, Kellogg Caribbean notified BFH that it had been assigned Kellogg USA's interest in the distribution agreement. The agreement stated that the terms of the initial Kellogg USA-BFH distribution agreement remained in "full force and effect."

After purchasing BFH's inventory, Kellogg Caribbean sold Kellogg products to BFH for distribution to the Puerto Rico market. As part of its consolidation effort, Kellogg Caribbean hired CWL, BFH's affiliate, to manage its warehouse operation. But Kellogg Caribbean and CWL did not sign a written agreement for these services.

In November 2004, Kellogg Caribbean informed BFH that it was exercising a provision in the distribution agreement entitling it to sell Kellogg "Cereal in a Cup" and "Fruit Snacks" products

---

[1]Appellees dispute the effectiveness of this assignment, but, at this stage of the case, we accept the facts as pleaded by Kellogg Caribbean. See supra at 4.

directly to Puerto Rico retailers. BFH would, however, remain the distributor of other Kellogg products.

Displeased, BFH sued Kellogg USA claiming that it had violated Law 75 by permitting "it or its affiliates" to sell "Cereal in a Cup" and "Fruit Snacks" directly to retailers. Five months later, Kellogg Caribbean notified CWL that it was terminating their warehouse services relationship. Shortly thereafter, appellees amended the complaint to add a count by CWL alleging that Kellogg USA "and/or its affiliates" violated Law 75 by terminating the warehouse services agreement. Appellees sought damages, declaratory relief, and a preliminary and permanent injunction.

Five days after appellees filed their amended complaint, Kellogg Caribbean moved "to intervene and to dismiss for lack of an indispensable party." In due course, the district court denied the motion. After an evidentiary hearing, the court entered a preliminary injunction requiring Kellogg USA "and/or its affiliates or subsidiaries" to specifically perform the agreements with appellees pending trial.

## II.

As mentioned above, federal jurisdiction is premised on the diversity of citizenship between Kellogg USA (a Michigan company) and BFH and CWL (Puerto Rico companies). But, if Kellogg Caribbean (a Puerto Rico company) is entitled to intervene as a matter of right under Rule 24(a)(2) and is an indispensable party

under Rule 19(b), the litigation must be dismissed because there would not be complete diversity.  As Professors Wright, Miller and Kane have explained:

> A person who should have been joined in the first instance because he is so related to the action that he is regarded as "indispensable" cannot intervene if his joinder will deprive the court of jurisdiction over the subject matter of the action.  The action must be dismissed, as Rule 19(b) requires, if the court concludes that he is so related to the action that he is indispensable.  For this reason the courts, in considering an application for intervention by one whose joinder would defeat diversity . . . will examine his relation to the action and [dismiss the action] if he . . . meets the tests of Rule 24(a)(2) and . . . was . . . an indispensable party to the original action.

7C Wright, Miller & Kane, <u>supra</u> § 1917, at 477-78; <u>see also</u> <u>Travelers Indemnity Co.</u> v. <u>Dingwell</u>, 884 F.2d 629, 636 (1st Cir. 1989).  We begin by considering whether  Kellogg Caribbean meets the requirements of Rule 24(a)(2).

### A.     Rule 24(a)(2)

We review the denial of a Rule 24(a)(2) motion for abuse of discretion.  <u>See</u> <u>Ewers</u> v. <u>Heron</u>, 419 F.3d 1, 2 (1st Cir. 2005).  But, because Rule 24(a)(2) provides explicit criteria for adjudicating a motion to intervene, the district court's discretion is more circumscribed than in some other contexts.  <u>See</u> <u>Cotter</u> v. <u>Mass. Assoc. of Minority Law Enforcement Officers</u>, 219 F.3d 31, 34 (1st Cir. 2000).  We will reverse if the district court committed a legal error, or if the court reaches a decision

patently out-of-step with the purposes of Rule 24(a)(2).
See Pub. Serv. Co. of N.H. v. Patch, 136 F.3d 197, 204 (1st Cir. 1998).

> Rule 24(a)(2) provides in pertinent part:
>
> > Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

A putative intervenor thus must show that (1) it timely moved to intervene; (2) it has an interest relating to the property or transaction that forms the basis of the ongoing suit; (3) the disposition of the action threatens to create a practical impediment to its ability to protects its interest; and (4) no existing party adequately represents its interests.[2] See Patch, 136 F.3d at 204. "The failure to satisfy [all four conditions] dooms intervention." Id.

---

[2]The requirements for a nonparty to intervene under Rule 24(a)(2) are similar to the requirements for a named party to join a nonparty as a "person needed for just adjudication" under Fed. R. Civ. P. 19(a)(2)(i). See 1966 Advisory Committee Notes to Fed. R. Civ. P. 24. Therefore, cases applying Rule 19(a)(2)(i) are helpful in interpreting application of Rule 24(a)(2) and vice versa. See Pujol v. Shearson/Am. Express, Inc., 877 F.2d 132, 135 (1st Cir. 1989); 4 J. Moore, Moore's Federal Practice § 19.02[5][c] (2005).

Because appellees concede that Kellogg Caribbean timely moved to intervene, we first consider whether Kellogg Caribbean has "an interest relating to the property or transaction which is the subject of the action." Kellogg Caribbean easily meets this requirement. An intervenor has a sufficient interest in the subject of the litigation where the intervenor's contractual rights may be affected by a proposed remedy. See Forest Conserv. Council v. United States Forest Serv., 66 F.3d 1489, 1495 (9th Cir. 1995); Harris v. Pernsley, 820 F.2d 592, 601 (3d Cir. 1987). Here, appellees' proposed remedy -- an injunction requiring specific performance of the agreements -- obviously would affect Kellogg Caribbean's asserted contractual rights. Kellogg Caribbean is the only Kellogg entity which is a party to these agreements so that an injunction specifically enforcing the agreements would surely limit its opportunity to terminate or alter its future business relationship with appellees.[3]

This same rationale satisfies the requirement that Kellogg Caribbean's interests, as a practical matter, may be impaired by this litigation. Appellees seek an injunction requiring specific performance that could bind Kellogg Caribbean. See Fed. R. Civ. P. 65(d); see generally 11A Wright, Miller & Kane, supra § 2956 (discussing the circumstances in which a

_____

[3]Appellees claim that Kellogg Caribbean has no interest in BFH's claim because Kellogg USA's assignment of the distribution agreement to Kellogg Caribbean was ineffective. But, as mentioned previously, we assume for purposes of this appeal that the assignment was effective. See supra at n.1.

-9-

nonparty may be bound by an injunction).  Thus, this litigation could result (and preliminarily has resulted) in an order directly affecting Kellogg Caribbean's contractual rights.  This is more than sufficient to satisfy the "practical impediment" requirement.  See Daggett v. Comm. on Governmental Ethics & Election Practices, 172 F.3d 104, 110-11 (1st Cir. 1999) (holding that the possibility that the litigation could end with an injunction adversely affecting intervenors' interests was adequate to satisfy this aspect of Rule 24(a)(2)).

This brings us to the district court's basis for denying intervention: that Kellogg Caribbean's interests are sufficiently represented by Kellogg USA.  In so ruling, the district court concluded that, because Kellogg USA and Kellogg Caribbean are subsidiaries of a common parent, there is a presumption that Kellogg USA would adequately represent Kellogg Caribbean's interests.  According to the district court, Kellogg Caribbean could only rebut this presumption by showing that its interests were somehow adverse to those of Kellogg USA, there was collusion between Kellogg USA and appellees, or Kellogg USA has committed nonfeasance in litigating the case.  Because Kellogg Caribbean did not make any of these showings, the court denied intervention.

Typically, an intervenor need only make a "minimal" showing that the representation afforded by a named party would prove inadequate.  Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972); see Patch, 136 F.3d at 207.  However, in cases

-10-

where the intervenor's ultimate objective matches that of the named party, a rebuttable presumption of adequate representation applies. See Daggett, 172 F.3d at 111; Moosehead Sanitary Dist. v. S.G. Phillips Corp., 610 F.2d 49, 54 (1st Cir. 1979). We are doubtful that this presumption should apply based solely on the fact that Kellogg Caribbean and Kellogg USA share the same parent company. Cf. Pujol, 877 F.2d at 135 (stating that "corporate alter ego status does not, by itself, mean that [the s]ubsidiary" is automatically denied intervention).

But assuming arguendo that this presumption applies, we think that the district court focused too narrowly when it ruled that Kellogg Caribbean could only rebut the presumption by showing adversity of interest, collusion, or nonfeasance. We have explained that this trilogy of grounds for rebutting the adequate representation presumption is only illustrative. See Daggett, 172 F.3d at 111. Indeed, we have stressed the case-specific nature of this inquiry, Maine v. United States Fish & Wildlife Serv., 262 F.3d 13, 19 (1st Cir. 2001), and have discouraged district courts from identifying only a limited number of "cubbyholes" for inadequate representation claims, Mass. Food Assoc. v. Mass. Alcohol Beverages Control Comm., 197 F.3d 560, 567 n.5 (1st Cir. 1999).

Rather, to overcome the presumption, the intervenor need only offer "an adequate explanation as to why" it is not sufficiently represented by the named party. Maine, 262 F.3d at

19. One way for the intervenor to show inadequate representation is to demonstrate that its interests are sufficiently different in kind or degree from those of the named party. See United Nuclear Corp. v. Cannon, 696 F.2d 141, 144 (1st Cir. 1982); Glancy v. Taubman Cts., Inc., 373 F.3d 656, 675 (6th Cir. 2004) ("Asymmetry in the intensity . . of interest can prevent a named party from representing the interests of the absentee.").

To support its inadequate representation claim, Kellogg Caribbean contends that the arguments it would emphasize are different from those that Kellogg USA has pressed and will press. According to Kellogg Caribbean, Kellogg USA will stress that it is not a party to the agreements at issue and therefore cannot be held liable for breaching those agreements under Law 75.[4] See Goya de P.R., Inc. v. Rowland Coffee Roasters, Inc., 206 F. Supp. 2d 211, 218-19 (D.P.R. 2002) (holding that a manufacturer that assigns its interest in distribution contract is generally not liable under Law 75). On the other hand, Kellogg Caribbean contends, because it admits that it is a party to the agreements, it would defend by arguing that appellees' allegations of wrongdoing are unfounded. In Kellogg Caribbean's view, this difference in emphasis is sufficient to demonstrate that Kellogg USA does not adequately represent its interests.

In assessing this argument, we observe first that,

---

[4]This was Kellogg USA's lead argument in response to appellees' preliminary injunction motion.

because of the potential for an injunction binding Kellogg Caribbean's future dealings, Kellogg Caribbean has a tangible and substantial stake in the outcome of this case.  Because of this direct interest, the burden on Kellogg Caribbean to show inadequate representation is lighter than if its interest was "thin and widely shared."  Daggett, 172 F.3d at 113-14; see also Virg. Sur. Co. v. Northrop Grumman Corp., 144 F.3d 1243, 1248 (9th Cir. 1998) (concluding that a subsidiary was a necessary party in a lawsuit against the parent because the litigation could result in an injunction limiting the subsidiary's rights).

We recognize that there is nothing to prevent Kellogg USA from defending this lawsuit by arguing that, even if it is a party to the agreements, Kellogg Caribbean acted lawfully.  But, as we will explain, Kellogg Caribbean almost certainly has more to lose than Kellogg USA in this litigation -- at least insofar as appellees seek relief enjoining Kellogg Caribbean to perform under the agreements.

According to Kellogg Caribbean's pleadings (which we accept as true, see supra at 4), Kellogg USA is not a party to the agreements, does not own or control Kellogg Caribbean, does no business in Puerto Rico, and had no involvement in the events underlying appellees' complaint.  Unlike Kellogg Caribbean, Kellogg USA is unlikely to be harmed by an injunction ordering specific performance of the agreements; after all, it no longer has a business relationship with appellees.  See Tell v. Trustees

-13-

of Dartmouth Coll., 145 F.3d 417, 419 (1st Cir. 1998) (stating that "without a perfect identity of interests, a court must be very cautious in concluding that a litigant will serve as a proxy for an absent party"). The potential for this litigation to have a greater adverse impact on Kellogg Caribbean is a sufficient basis for concluding that Kellogg USA may not serve as an adequate proxy. See Nat. Union Fire Ins. Co. v. Rite Aid of S. Carolina, Inc., 210 F.3d 246, 251 (4th Cir. 2000) (concluding that a parent company was a necessary party in a lawsuit against its subsidiary because the results of the litigation could have more serious future consequences for the parent); see also Southwest Ctr. for Biological Diversity, 268 F.3d at 824 ("[I]t is not Applicants' burden at this stage in the litigation to anticipate specific differences in trial strategy. It is sufficient for Applicants to show that, because of differences in interests, it is likely that Defendants will not advance the same arguments as Applicants.").

In sum, Kellogg Caribbean's attempt to overcome the presumption of adequate representation should not have been limited to showing adversity, collusion or nonfeasance. Because the injunctive relief sought would affect Kellogg Caribbean and because "there is sufficient doubt about the adequacy of representation to warrant intervention," Trbovich, 404 U.S. at 538, Kellogg Caribbean has satisfied the Rule 24(a)(2) requirements.

-14-

**B.    Rule 19(b)**

Having concluded that Kellogg Caribbean meets the Rule 24(a)(2) requirements, but that intervention would destroy complete diversity, we turn to whether Kellogg Caribbean is an indispensable party under Rule 19(b).  See supra at 7-8.  Rule 19(b) provides that, if a nonparty is deemed necessary to litigation but joining that nonparty would deprive the court of jurisdiction, the court should permit the action to proceed only to the extent that "equity and good conscience" warrant. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 109 (1968).  Four factors channel the analysis:

> [F]irst to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

We review Rule 19(b) determinations only for abuse of discretion, see United States v. San Juan Bay Marina, 239 F.3d 400, 403 (1st Cir. 2001), because such determinations involve "the balancing of competing interests" and "must be steeped in pragmatic considerations," Travelers, 884 F.2d at 635.  Here, the district court did not independently analyze the Rule 19(b) question due to the erroneous conclusion that Kellogg Caribbean

-15-

could not intervene. Because the district court is in the "preferred position" to make the Rule 19(b) determination, we think that it should have the first opportunity to address the question. Id.

That said, at least one thing is clear: Kellogg Caribbean is indispensable insofar as appellees seek an injunction that affects Kellogg Caribbean's interests under the agreements. See, e.g., Acton Co. Inc. of Mass. v. Bachman Foods, Inc., 668 F.2d 76, 81-82 (1st Cir. 1982) (stating that, in an action seeking recision of a contract, all parties to the contract and others having a substantial interest in it are indispensable parties); 7 Wright, Miller & Kane, supra § 1613, at 196 ("[I]n an action seeking specific performance of a contract all persons who will be required to act to carry out a court order compelling performance have been held to be indispensable parties."). As discussed earlier, our conclusion that Kellogg Caribbean meets Rule 24(a)(2)'s requirements was influenced by our concern that it could be enjoined to perform under the agreements without being adequately represented. This analysis also renders Kellogg Caribbean an indispensable party, at least to the extent that appellees seek specific performance. See Acton, 668 F.2d at 81-82.

Nevertheless, there are multiple ways that the district court could resolve the Rule 19(b) question consistent with this limitation. For example, it could decide that Kellogg

-16-

Caribbean's involvement in the underlying dispute is so extensive that it is indispensable to a proper adjudication of the case and therefore dismiss the action entirely.  See <u>H.D. Corp. of P.R.</u> v. <u>Ford Motor Co.</u>, 791 F.2d 987, 993 (1st Cir. 1986); <u>Freeman</u> v. <u>Northwest Acceptance Corp.</u>, 754 F.2d 553, 559 (5th Cir. 1985).  It also could decide to retain jurisdiction and limit the relief available to appellees.  <u>See</u> 7 Wright, Miller & Kane, <u>supra</u> § 1608 at 107 ("[W]hen rescission or specific performance might have a detrimental impact on an absent person, money damages may prove to be an appropriate alternative.").  We do not prejudge whether one of these approaches, or perhaps another, provides a better avenue for accommodating the "competing interests" of the parties.

This rationale requires, however, that we vacate the preliminary injunction while the district court considers the Rule 19(b) question.  This injunction, by its terms, requires that Kellogg Caribbean (as an affiliate of Kellogg USA) perform under the agreements while this litigation is pending.  As just discussed, this kind of relief cannot be granted consistent with Rule 19(b) because it harms Kellogg Caribbean's legal interests.

## III.

For the reasons stated, we **<u>vacate</u>** the preliminary injunction and **<u>remand</u>** for further proceedings consistent with this opinion.  The parties shall bear their own costs.

**<u>So ordered</u>**.